UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| EUGENE SCALIA, | ) | |
| Secretary of Labor, | ) | CASE NO. |
| United States Department of Labor, | ) | |
| | ) | 2:20-cv-00106-RWS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED BENEFITS MANAGEMENT | ) | |
| SYSTEMS USA, INC., a South Carolina | ) | |
| Corporation; C. KENNETH JOHNSON, an | ) | |
| Individual; and RANDY MILTON WRIGHT, | ) | |
| an Individual, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff, Eugene Scalia, Secretary of Labor, United States Department of

Labor (the "Secretary"), alleges as follows:

## **Introduction**

The Secretary of Labor has been delegated responsibility for enforcing the

fiduciary provisions of the Employee Retirement Income Security Act of 1974

("ERISA").  Pursuant to that responsibility and authority, the Secretary initiated an

investigation into Advance Benefits Management Systems, USA, Inc. ("ABMS"),

a third-party administrator of employer-sponsored healthcare plans that ceased

operations on May 3, 2019, leaving millions in unpaid claims and thousands of betrayed and victimized participants and beneficiaries.  During that investigation, the Secretary discovered and alleges herein that ABMS and its officers, contrary to their commitments to employer clients – and to their ERISA-based obligations as fiduciaries charged with a duty of prudence and undivided loyalty to the participants and beneficiaries of the plans they administered  – comingled, misappropriated, mismanaged, and diverted for their own use the funds entrusted to them strictly for the payment of the uninsured portions of medical claims ("Claims Funds").  They used funds designated for the payment of claims to pay ABMS operating expenses, diverted Claims Funds to other companies they or their family members controlled, used funds belonging to one employer to pay the liabilities of another, and altogether failed to track payments by and on behalf of their employer clients.  Furthermore, although payment of the claims incurred by the participants and beneficiaries of the plans administered by ABMS also depended on stop loss insurance coverage, ABMS and its officers, contrary to their contractual obligations and fiduciary duties, failed to make timely claims under those policies and so mismanaged the plans that the insurer for almost half of the ABMS administered plans refused to pay claims.    Ultimately, because of its fiduciaries' misuse of funds and failure to obtain insurance reimbursement, ABMS and the Participating Plans became insolvent and incapable of paying claims they

were obligated and should have been able to pay.  That insolvency left over

$7,000,000 in unpaid clams, and thousands of participants and beneficiaries, who

made contributions believing they would have health coverage, without the

benefits they were promised.  In this action, the Secretary seeks to remedy the

wrongs committed by ABMS and its officers and prevent the company and its

officers from ever being in a position to engage in similar wrongdoing.

### Nature of the Action

1.      This cause of action arises under ERISA, 29 U.S.C. § 1001, *et seq.*,

and is brought by the Secretary under Sections 502(a)(2) and (5) of ERISA, 29

U.S.C. §§ 1132(a)(2) and (5), to enjoin acts and practices which violate the

provisions of Title I of ERISA, to obtain appropriate relief for breaches of

fiduciary duty under ERISA Section 409, 29 U.S.C. § 1109, and to obtain such

other further relief as may be appropriate to redress violations and enforce the

provisions of that Title.

### Jurisdiction and Venue

2.      Jurisdiction of this matter is conferred upon the Court by Section

502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3.      Venue for this action lies in the Northern District of Georgia pursuant

to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because many of the

alleged breaches took place within this Court's jurisdiction, and the plans at issue are partially administered by ABMS within this Court's jurisdiction.

## The Parties

4.      Defendant ABMS is a privately held South Carolina corporation formed on or about September 30, 2013.   ABMS acted as a third-party plan administrator for at least 118 self-funded employee healthcare plans (the "Participating Plans") sponsored by at least 108 employers.  Each Participating Plan was established or maintained by an employer for the purpose of providing medical and other health and welfare benefits pursuant to ERISA Section 3(2), 29 U.S.C. § 1002(2), and is thus an employee benefit plan pursuant to ERISA Section 3(3), 29 U.S.C. § 1002(3).  ABMS controlled employer and employee contributions, held Participating Plan assets in bank accounts it controlled, and was responsible for paying eligible medical claims with Participating Plan assets. ABMS exercised authority and control over the assets of the Participating Plans and had discretionary authority and control over the management and administration of the Participating Plans, and therefore, is a fiduciary to the Participating Plans pursuant to ERISA Sections 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A).

5.     Defendant C. Kenneth Johnson ("Johnson" or "Defendant Johnson") is the founder and Chief Executive Officer of ABMS. Johnson oversaw the bookkeeping for ABMS. Johnson approved ABMS' claims payments and held signatory authority over ABMS bank accounts holding Participating Plan assets. Because Johnson had and exercised discretionary authority and control over the administration and management of the Participating Plans and authority and control over the distribution of their assets, including authority over the payment of claims, Johnson is a fiduciary to the Participating Plans pursuant to ERISA Sections 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A).

6.     Defendant Randy Wright ("Wright" or "Defendant Wright") was the President of ABMS.  Wright oversaw claims administration on behalf of ABMS with respect to the Participating Plans and performed the functions of a plan administrator. Wright held signatory authority on the ABMS Claims Account, which held Participating Plan assets, and signed checks that used Participating Plan assets to pay eligible medical claims. Because Wright had, and exercised, discretionary authority over the Participating Plans and authority and control over their assets, Wright is a fiduciary to the Participating Plans pursuant to ERISA Sections 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A).

**Factual Allegations**

*The Participating Plans*

7.      ABMS began offering employee health and welfare coverage to
employers using individual employer plans in approximately 2015. ABMS' health
coverage options provided an assortment of health benefits, including medical,
mental health, hospital, facility, laboratory, emergency, and prescription drug
coverage. Each employer adopted its plan by signing a summary plan description
("SPD") and administrative service agreement ("ASA") adapted from prototype
SPD and ASA documents developed by ABMS. ABMS modified each individual
employer's SPDs and ASAs to reflect stop loss insurance premiums, employer and
employee contribution rates, and administrative fees due to ABMS. Different
employers in ABMS' book of business used different stop loss carriers, including
Strategic Underwriting Solutions and Nationwide Insurance, among others. The
stop loss carrier was usually selected by the broker working with the individual
employer.  Strategic Underwriting Solutions provided stop loss coverage for the
largest number of ABMS' clients, covering 50 of the 118 plans ABMS
administered. In addition to providing stop loss coverage, each employer's stop
loss carrier also calculated the amount of employer and employee contributions
due under each Participating Plan.  Employers could choose whether to include
selections from a limited set of additional services offered by ABMS, including

COBRA administration, Pharmacy Benefits Management Integration, and/or Flexible Spending Accounts. The remaining terms of each Participating Plan, including the employer's and ABMS' responsibilities, remained unchanged from the prototype documents and were, therefore, uniform across the Participating Plans.

8.     The Participating Plans were "level-funded" health benefit plans, which blended elements of fully-insured and self-funded plans. Under the Participating Plans, an employer obtains two forms of stop loss insurance policies: Specific ("spec") coverage and Aggregate ("agg") coverage. Specific coverage insures any claim for a covered individual once that individual's claim accruals exceed a specific value specified in the stop loss agreement, known as the "attachment point." Aggregate coverage insures all claims once the employer's claims total has reached an aggregate attachment point specified in the stop loss agreement. The employer is responsible for funding all claims that do not meet either the specific or aggregate attachment points.

9.     Employer contributions and employee contributions funded each component of the Participating Plans.  Each month, each employer would make a single payment to ABMS in an amount specified in the ASAs and stop loss policies that was comprised of employer and employee contributions. Pursuant to the Participating Plan documents, these payments encompassed three distinct types

of funds, which ABMS was required to separate. First, these monthly payments included Claims Funds – those funds intended to pay the employer's uninsured portion of the claims accrued by the participants in the employer's plan.  ABMS was required to hold these Claims Funds in a separate fiduciary account (the "Claims Account") and use them solely to pay medical claims incurred by the Participating Plan's participants and beneficiaries.  Second, these monthly payments included the employer's stop loss coverage premiums. ABMS was to use these funds solely to pay the employer's premiums to its stop loss coverage providers. Finally, these monthly payments included the employer's payment of administrative fees. These were the fees charged by ABMS for the services of administering the employer's plan. Therefore, these administrative fees were the only funds within the employers' monthly payments that ABMS was entitled to keep and/or use for purposes not related to the Participating Plans.

*The Fiduciaries*

10.     From 2013 to May 2019, ABMS operated from two offices: one in Charleston, South Carolina, and one in Gainesville, Georgia.

11.     Defendant Johnson oversaw the Charleston office. Defendant Wright oversaw the Gainesville office.

12.     The Gainesville office was a claims processing office. It managed ABMS' sales, marketing, client outreach, and claims processing operations. Those operations included client intake as well as adjudication and payment of claims.

13.     Payment of a Participating Plan participant's claim involved both offices. A submitted claim would be sent to the Gainesville office for submission to Synthesis Healthcare, a third-party claims adjudicator. ABMS submitted this information electronically through an automated online portal created and operated by Synthesis Healthcare. Defendant Wright was responsible for reviewing the claims adjudicators' decisions and had authority to reject individual adjudications. Once the claim was adjudicated, the Gainesville office, under the supervision of Defendant Wright, would write a check for payment of the claim. The check was then sent to Charleston for financial approval under the direction of Defendant Johnson. Once approved, the Gainesville office would submit the check to pay the claim.

*Misuse of Claims Funds*

14.     In 2016, ABMS began commingling all employer payments in the Claims Account instead of separating those payments into Claims Funds, stop-loss premiums, and administrative fees.  ABMS did not maintain complete and accurate records tracking the sources of the assets within this account.  Sometime thereafter, due in part to that inadequate recordkeeping, it began using those commingled

funds indiscriminately to pay claims, without ensuring that the funds used to pay a claim were solely contributed by the employer of the participant or beneficiary incurring the claim.

15.    Defendant Johnson has repeatedly admitted commingling funds within the Claims Account and using the Claims Funds of one plan to pay another plan's liability, stating that he was "robbing Peter to pay Paul."

16.    While the ASAs required that ABMS keep employer claims funds in a fiduciary claims account, ABMS frequently transferred Claims Funds from its commingled Claims Account to other accounts and used some of these funds for purposes not related to the Participating Plans.  For example:

     a.  From January 28, 2019, through April 16, 2019, Johnson directed cumulative transfers from the ABMS Claims Account to the ABMS Operating Account totaling $280,000.

     b.  During that same period, Johnson directed cumulative transfers from the ABMS Claims Account to the ABMS payroll account totaling $260,000.

     c.  Between January 6, 2017, and April 3, 2019, ABMS transferred $709,000 from the ABMS Claims Account to the general account of ABMS' parent company, Advance Insurance Management

10

Systems, Inc. ("AIMS"). AIMS is, or at all relevant times was, owned 41.89% by Johnson and 13.19% by Wright.

d.  Between March 9, 2018, and February 4, 2019, ABMS transferred $87,000 from the ABMS Claims Account to Advance Risk Management Solutions, Inc., a company owned by AIMS and controlled by Defendant Johnson.

e.  Between July 9, 2018, and December 3, 2018, ABMS transferred $17,000 from the ABMS Claims Account to Advance Telemedicine Enterprises, Inc., a company owned by AIMS and controlled by Defendant Johnson.

f.  On March 15, 2018, Defendant Johnson hired Advance Design and Build LLC ("AD&B"), a construction company owned by Defendant Johnson's son, Dean Johnson, to build out a new office space for ABMS.  By July 30, 2019, ABMS had transferred $102,000 in Claims Funds to AD&B.

17.  While the ASAs specified that ABMS would pay claims only from the Claims Account, ABMS paid some medical claims directly from the ABMS Operating Account instead. For example, on August 9, 2018, ABMS issued check number 1121 from the Operating Account paying a $271.36 claim to Blue Ridge Pathologists. Similarly, on July 12, 2018, ABMS issued check number 1076 from

the Operating Account paying a $370.00 claim to Laboratory Corporation of America.

18.    The total amount of assets transferred from the Claims Account exceeded the administration fees ABMS could legitimately use for non-plan purposes, even giving ABMS credit for the claims paid from its operating account. Specifically, between 2016 and 2019, the assets transferred from the Claims Account for non-plan purposes totaled $7,072,315.63.  During that same period of time, $4,113,186.71 in claims were paid from the operating account.  The administrative fees due ABMS totaled $1,348,374.  Thus, at least $1,610,754.92 of Participating Plan assets were used for non-plan purposes.

*Stop Loss Insurance*

19.    The ASAs further required ABMS to facilitate each employer's efforts to obtain a stop loss policy. ABMS was to submit each employer's application and supporting documents to the stop loss carrier's underwriter, obtain confirmation of coverage, and inform the employer of the limits of its coverage.

20.    The ASAs also required ABMS to manage the submission of claims to the stop loss carriers.

21.    However, ABMS' commingling of the Participating Plans' assets effectively prevented ABMS from obtaining stop loss reimbursement because it also prevented ABMS from providing adequate information for stop loss carriers to

process reimbursement claims. Specifically, beginning in or around February 2018, Strategic Underwriting Solutions, the underwriter for 50 of the plans ABMS administered, refused to fulfill stop loss claims because ABMS was unable to provide documentation verifying that employers had paid their premiums.

22.    Moreover, ABMS demonstrably failed to employ a sufficient number of adequately trained employees and implement sufficient processes necessary for the timely filing of stop loss claims. ABMS employed only one employee to file all stop loss claims, which likely numbered in the hundreds annually. This employee had no training or prior experience in this work. Despite this lack of training or experience, ABMS, Johnson, and Wright did not exercise any oversight over her work. By February 2018, ABMS was one year behind in filing stop loss spec claims and two years behind in filing agg claims.

*Administrative Fees*

23.    ABMS' primary source of revenue was the administrative fees specified in the ASAs.

24.    Defendant Wright was responsible for setting the administrative fee amount. Beginning in November 2018, Defendant Wright set fees as low as $12 per person per month.

25.    Upon information and belief, this administrative fee amount was far below the industry standard and was too low to maintain ABMS' solvency.

26.     Defendant Johnson told Defendant Wright to increase the administrative fee amount. However, Defendant Wright never did so.

*Unpaid Claims*

27.     ABMS' commingling and misappropriation of employer Claims Funds, as well as ABMS' failure to obtain stop loss reimbursement, resulted in unpaid claims.  On April 12, 2019, Defendants consented to an agreement with the State of South Carolina's Department of Insurance ("SC-DOI") after being unable to pay a number of claims due to a lack of funds. Under this agreement, SC-DOI took on administrative supervision of Defendant ABMS. Defendants ABMS and Johnson thereby relinquished their rights to the management of Participating Plan assets. As a result, there are currently no ERISA fiduciaries in place to administer the Participating Plans and pay claims. SC-DOI has asked that the Secretary take the necessary action to have an independent fiduciary appointed for the Participating Plans.

28.     As of April 25, 2019, ABMS held total assets of $325,890.08, currently in the custody of SC-DOI.  As of October 15, 2019, the Participating Plans had a total of $7,603,743.90 in unpaid claims.

29.     As a result of ABMS' mismanagement and inability to pay medical claims, participants and beneficiaries of the Participating Plans, who were left with

more than $7,000,000 in unpaid claims, are experiencing continuing and escalating harms, including:

a. A number of participants have been subjected to collections actions stemming from unpaid medical bills that should have been paid by ABMS. Among other harms, these collections actions negatively impacted participants' credit. For example, one participant was sent to collections over a medical claim that ABMS should have but did not pay. This collections action adversely affected this individual's personal credit, which he had carefully maintained in "spotless" condition for more than 40 years.

b. Many other participants are being subjected to persistent and harassing threats of imminent collections actions as a result of ABMS' failure to pay their medical claims. Some participants have been forced to take drastic action, at considerable cost or harm to themselves, just to temporarily delay these proceedings. For example, as of September 27, 2019, another participant had been forced to make payments from his personal funds to reduce medical claims, which should have been paid by ABMS, in an effort to postpone collections. Despite these efforts, this participant stated that he remains "on the cusp" of a collections action.

**Violations**

30.     Defendants violated the provisions of ERISA, as follows:

a.     By commingling employee contributions in a single account with employer contributions, stop loss insurance premiums, and administrative fees, using employee contributions interchangeably with these other funds, using assets of the Participating Plans for purposes other than paying claims, and failing to appoint a trustee to oversee employee contributions, as described above, Defendants ABMS, Johnson, and Wright, as fiduciaries to the Participating Plans, failed to hold the assets of an employee benefit plan in trust by one or more trustee, in violation of ERISA Section 403(a), 29 U.S.C. § 1103(a);

b.     By allowing assets of the Participating Plans' Claims Funds to be used for purposes other than paying claims and paying the claims of some employers' participants with Claims Funds belonging to others, as described above, Defendants ABMS and Johnson, as fiduciaries to the Participating Plans, failed to ensure that the assets of the Participating Plans were held for the exclusive purposes of providing benefits to participants in those plans and their beneficiaries and defraying reasonable expenses of administering the Participating Plans, in violation of ERISA Section 403(c)(1), 29 U.S.C. § 1103(c)(1);

c.      By using assets of the Participating Plans for purposes other than paying claims, paying the claims of some employers' participants with Claims Funds belonging to other employers, and by failing to obtain stop loss insurance reimbursement, as described above, Defendants ABMS, Johnson, and Wright, as fiduciaries to the Participating Plans, failed to discharge their duties with respect to the Participating Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Participating Plans, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

d.      By using assets of the Participating Plans for purposes other than paying claims, paying the claims of some employers' participants with Claims Funds belonging to other employers, failing to maintain adequate records of the Participating Plans, and failing to obtain stop loss insurance reimbursement, as described above, Defendants ABMS, Johnson, and Wright, as fiduciaries to the Participating Plans, failed to discharge their duties with respect to the Participating Plans solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the

17

conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

e.     By commingling funds, failing to pay claims, and failing to file for stop loss insurance reimbursement, as described above, Defendants ABMS, Johnson, and Wright, as fiduciaries to the Participating Plans, failed to discharge their duties with respect to the Participating Plans solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the Participating Plans, in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);

f.     Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants ABMS, Johnson, and Wright are liable for the breaches of their co-fiduciaries because, as described above, they knowingly participated in or concealed an act or omission, knowing that such act or omission is a breach; they enabled the other fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach and did not make reasonable efforts under the circumstances to remedy it;

g.     By transferring assets of the Participating Plans to businesses controlled by Johnson, using assets of the Participating Plans to pay for

18

ABMS' operating expenses, and transferring assets of the Participating Plans

to a company owned by Johnson's son, as described above, Defendants

ABMS and Johnson, as fiduciaries to the Participating Plans, caused the

Participating Plans to engage in transactions that they knew or should have

known constituted direct transfers to, or use by or for the benefit of, parties

in interest of any assets of the Participating Plans, in violation of ERISA

Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

h.     By transferring assets of the Participating Plans to businesses

controlled by Johnson, using assets of the Participating Plans to pay for

ABMS' operating expenses, and transferring assets of the Participating Plans

to a company owned by Johnson's son, as described above, Defendants

ABMS and Johnson, as fiduciaries to the Participating Plans, dealt with the

assets of the Participating Plans in their own interest or on behalf of a party

whose interests are adverse to the interests of the Participating Plans or their

participants or beneficiaries, in violation of ERISA Sections 406(b)(1) and

(b)(2), 29 U.S.C. §§ 1106(b)(1) and (b)(2).

WHEREFORE, pursuant to ERISA Sections 502(a)(2) and (5), 29

U.S.C. §§ 1132(a)(2) and (5), Plaintiff prays that the Court enter an Order:

A. Appointing an Independent Fiduciary and Plan Administrator to

the Participating Plans, with fiduciary authority over their

19

administration and management, and control over the Participating Plans' assets;

B. Order Defendants ABMS, Johnson, and Wright to provide to the Independent Fiduciary all documents, records, accounts, or other information required to administer and manage the Participating Plans;

C. Preliminarily and permanently removing Defendants ABMS, Johnson, and Wright and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, attorneys, and any other party acting in concert with them or at their direction, as fiduciaries, service providers, trustees, and administrators of the Participating Plans;

D. Preliminarily and permanently enjoining Defendants ABMS, Johnson, and Wright and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, attorneys, and any other party acting in concert with them or at their direction from acting as a fiduciary, service provider, trustee, or administrator to the Participating Plans;

E. Preliminarily and permanently enjoining Defendants ABMS, Johnson, and Wright and anyone acting on their behalf, including

their officers, agents, employees, assigns, subsidiaries, affiliates, attorneys, and any other party acting in concert with them or at their direction from moving Participating Plan Assets, except at the direction of the Independent Fiduciary defined in Paragraph A;

F.  Requiring Defendants ABMS, Johnson, and Wright to jointly and severally restore all losses caused by their fiduciary breaches to the Participating Plans;

G.  Requiring Defendants ABMS, Johnson, and Wright to jointly and severally reimburse the fees and expenses of the Independent Fiduciary to the Participating Plans;

H.  Requiring Defendants ABMS, Johnson, and Wright to disgorge to the Participating Plans all profits and fees and other monies earned in connection with their violations;

I.  Permanently enjoining Defendants ABMS, Johnson, and Wright, and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, attorneys, and any other party acting in concert with them or at their direction, from ever acting as a fiduciary or service provider to any plan covered by Title I of ERISA and from marketing or enrolling any employers,

21

professional employer organizations, or participants in any ERISA-covered health plan;

J.  Permanently enjoining ABMS, Johnson, and Wright from violating Title I of ERISA; and

K.  Granting such other relief as may be equitable, just, and proper, particularly including all writs relief for participants and beneficiaries in the Participating Plans facing debts, collections, and other ongoing harms from Defendants' violations of ERISA.

ADDRESS:

Office of the Solicitor
U. S. Department of Labor
61 Forsyth Street, S.W.
Room 7T10
Atlanta, GA 30303
(404) 302-5435
(404) 302-5438 (FAX)
walker.amy@dol.gov
lewis.robert@dol.gov
miller.daniel.p@dol.gov
Atlanta Docket
Atl.fedcourt@dol.gov

KATE S. O'SCANNLAIN
Solicitor of Labor

TREMELLE I. HOWARD
Regional Solicitor

ROBERT M. LEWIS, JR.
Counsel
Georgia Bar No. 451264

By: */s/ Amy R. Walker*
    AMY R. WALKER
    Senior Trial Attorney
    Georgia Bar No. 731180

DANIEL P. MILLER
Trial Attorney
Georgia Bar No. 463643

SOL Case No. 19-00480

Attorneys for Plaintiff